Our third case is number 23-16-64, Benton-Flores v. Defense. Okay, Mr. Bonk. May I begin, Your Honor? Yes. Thank you. Your Honors, I may please the Court. Christopher Bonk, Court Petitioner for Dale Benton-Flores. This is a whistleblower retaliation case on whether disclosures by a schoolteacher addressing threats to the safety of her students are indeed protected under the law. We would posit yes. Here, the Board erred in two distinct ways. First, in its 2014 holding, or in arbitrarily discarding its 2014 holding, that Ms. Benton-Flores' disclosures were indeed protected. Those are two different standards, though, right? One is you have to make a non-frivolous allegation to get jurisdiction, but then you have to, once you have jurisdiction, you have to prove by a prom difference. So how could a non-frivolous allegation that's a very low burden bind the Board to a decision on the later merits? Entirely different burdens there, Your Honor, correct, and that's our point here, is that procedurally that matter was dismissed at the earlier level, at the administrative judge level at the Board, on jurisdictional grounds. It was appealed up to the Board. The Board reviewed it based on the jurisdictional review. But in doing so, it did not only address the jurisdictional issues, specifically for the issue of were the disclosures protected or not. It also went into the merits determination. It issued a specific finding on the merits beyond the jurisdiction. Well, let's say we disagree with you on that, and that all the Board's opinion was doing was sending it back and saying, there's non-frivolous allegations here. You have to hear the case on the merits. Then that earlier decision can't be binding, right? I'm sorry. I think your reading of the Board's decision is wrong. It did not find that she had made a protected disclosure. It found that there was a non-frivolous allegation insufficient or sufficient to support Board jurisdiction. If I'm correct in reading the Board decision that way, then your argument about the binding effect of the earlier Board decision goes away, and then you need to get to the substantial evidence question of whether she had reasonable belief. That's correct, Judge. If in that event, absolutely, that binding effect argument would go away. We do believe that the Board's language there within that finding, within the 2016, or excuse me, within the 2014 determination, there's very It would be pretty rare for the Board as an appellate body in the MSPB system to go ahead and decide on the merits that she'd made disclosures with when there had been no full trial or anything like that. Not so rare. There's plenty of instances. I think we've cited a few of them brief. The Johns v. Veterans Affairs case in 2003, the Orr v. Treasury case, this Court, excuse me, affirmed in 2000 on that. Both of those situations are IRA appeals like this one where there was a Well, we don't have to get into whether it's rare or not. It's not the normal course of things. There was no record developed, so the Board sent it back to hear a case. The record was certainly light, Judge, and I think that's one of the issues that it really speaks to how low of a burden it really is for the preponderant evidence standard for whether these disclosures are protected or not. I mean, there's not a different preponderance evidence for whistleblower cases versus any other case. It's the preponderance standard. Certainly, certainly. But we hear when the Board reached its decision in 2014, when it had this carve-out, when it had this finding, excuse me, not carve-out, but finding that the disinterested observer could have reasonably concluded at Appendix 56 that the appellant's disclosures 3 through 5, the same ones we're looking at here today, were disclosures of violations of law, rule, or regulation. It went on further. There's a footnote there, footnote 3, going back to the Board's Chavez case, again, digging into this issue of, has Ms. Ben-Flores provided sufficiently detailed statements to implicate an identifiable violation of law, rule, or regulation? Because the Board notes in the 2014 decision she doesn't specify what law, rules, or regulations. There are not specific identifications to that. But that's okay. And the Board notes that the cited provision of Chavez specifically goes to the merits. It is not a jurisdictional determination. It is not a jurisdictional discussion that the Board cites in that. Well, I mean, I guess now we're dealing with the question of whether she had a reasonable belief as to these particular instances presenting a danger to health or safety or some violation of a regulation. So when the Board, in the earlier decision, said that there was jurisdiction, they weren't resolving the question of whether she had a reasonable belief, correct? They were resolving that as well. In addition, I think the Board goes on to note the jurisdictional satisfaction or the satisfaction of the jurisdictional burden. Necessarily so because they— Where in the Board's decision does it say that she has met her burden by a preponderance that she had a reasonable belief? It does not judge yet. They do not go out and explicitly state that. I'll admit that the language on that doesn't go quite that far. So what are you relying on, then, to say that that's been resolved? Because the Board's holding at 56 that the disinterested observer could have reasonably been concluded and so forth. That is not the jurisdictional burden. But this is all under the heading of the appellant made non-frivolous allegations of protected disclosures. And so they're saying that under the non-frivolous standard, we find that a disinterested observer could have reasonably concluded that. Yeah, and I think, Judge— I think you need to move on to your substantial argument. I understand that. I appreciate that, Judge. Because you have other arguments there. We certainly do. And I think, on to that point, one of our concerns, our main concern is the judge or the Board here in holding that Ms. Benflores has not met her substantial evidence standard or, excuse me, has not met her preponderant evidence standard with demonstrating that these disclosures are protected has essentially elevated, escalated, moved the goalposts on Ms. Benflores as to what that standard is and what she needs to do to fill that. As mentioned, Ms. Benflores did not specifically articulate law rules or regulations within that, her disclosures. But, again, all she needs to do is provide sufficiently detailed statements. Yeah, I don't think there's really any issue about whether she had to cite the particular regulation or not. Certainly, Judge. But she has to nod to at least some kind of policy or something like that with specificity, right? It can't just be vague, conclusory allegations, which is what the Board found here. But here, in the circumstances we're looking at here, I think are very interesting when it comes to that question because, you know, to your point as to a nod or something or indicate maybe she has to say that it's contrary to school regulation but she doesn't have the specific number. I don't think it's even that granular. Here, you have a school facility. The children, there's a reasonable understanding that there's going to be rules, regulations, setting forth guidelines for safety of children in the school. I mean, to cut through this, I think it is fair to say that there was a policy that the school had against child abuse because there was a policy that people could be disciplined for not reporting child abuse. That must mean that child abuse is a violation of the policy. So the question in my mind is whether, looking at these allegations, she sufficiently alleged child abuse, particularly 3A, 3B, and 3C. And if I understand what happened before the Board, there was some issue about whether, I guess, 3A and 3B, whether she actually made those allegations, but I don't think that issue was resolved by the Board. So the question is, on the face of it, did their 3A, 3B, and 3C allege sufficiently child abuse? So, Judge, to your point on 3A and 3B, those were verbal-only disclosures to the point of whether they were raised or not. Those were ones where I think the leadership acknowledged they didn't recall the specifics of those allegations. But I don't read the Board as saying that they disbelieved her when she said she raised these allegations. So let's assume that we're dealing with a situation in which we have to assume that she made the allegations. So address the question of whether those allegations in 3A, 3B, and 3C sufficiently alleged child abuse. So she doesn't have to specifically allege child abuse here. But she has to do more than just allege mistreatment, doesn't she? Yes, certainly. And so here we've got some of the regulations. And I'm getting to your question there, Judge Black, as well on this. The Board noted in 2014 you have specific DOD regulations, 4800, 4700. 4800 in particular deals with safety of the children. It's fairly broad, admittedly so. But here, like, for example, in 3A, we have a situation where we miss Ben Flores. That's the disclosure regarding the dragging and isolating dispute. You've got to clarify this for me. What are you saying is the standard that she thought was violated? So I think— Specifically, what's the standard? The most specific one we have here is 4800. 4800 is dealing with the safety, making sure the schools, facilities are safe for the children here, 4800. She doesn't have to cite to it. No, no, I understand she doesn't, but you have to cite to it now. You have to convince us that her allegations amount to allegations of violations of that policy. What's the policy? The policy is children should be safe. What's the policy? The policy is the safety program, 4800. It's the one noted in the 2014 decision, requires safe classroom environments. There's addendum 4 that includes examples of no hot plates, open flames, et cetera, which goes to the exposed razor blade issue as well, ensuring safe conditions and practices for all DOD facilities, including outdoor— So the allegation is that they didn't maintain a safe environment for the children. It's a very broad safety requirement. No. What's the standard? So it's a situation here where we have— What is the standard that she was saying was violated? She didn't specify. I understand, but you're saying now that her allegations fell into the category of alleging a violation of a standard. What is the standard? If I'm understanding your question, Judge, correctly, the standard that she's alleging violating are these general requirements for maintaining safety for the children in the classroom. Okay, so she was alleging, in your view, that the school wasn't maintaining a safe environment for the children, right? Correct, Judge. Okay. So how does 3A, 3B, and 3C allege the failure to maintain a safe environment? I'm not following that. So for 3A, for example, that's the dragging and isolating of student disclosure. That's a situation Ms. Benton-Flores sees, a 3-year-old with special needs being physically dragged, crying as part of the disclosure, from their classroom, from their classmates, into isolation. Okay, but these are autistic children. I mean, we know that they act up under certain circumstances. They're going to have to be physical restraint of the children that would not be normal in a traditional environment. So why is the allegation here, given the context in which this arose, a violation of failure to maintain a safe environment? Because here, again, it goes to this context. It goes to this context of Ms. Benton-Flores, a special needs educator here, observing the physical dragging of a child crying into isolation. She raises in the disclosure that this manner of isolation, to her understanding from what she observed, has been barred in a number of jurisdictions for decades. She reasonably understood that this is not maintaining a safe environment for the student. Do you agree with me that the regulation you're pointing to instructs the employees to take reasonable measures? I believe that's the case, yes, Jo. Okay. So in light of that, I understand that at least one of the issues was she thought there was a razor blade that put the children in danger. Is that correct? That's one of the disclosures, absolutely. Why didn't she immediately remove it if that was one of the things that she was concerned about? The immediacy of her action on that, I think, is an independent question from is her disclosure of the exposure of the razor blade protected or not? But it goes to whether she had a reasonable belief that it actually was a safety violation, because if she thought it was a safety violation, she would have picked it up and taken it away. Rather than trying to take a picture of it, email it to somebody, to get some other guy in trouble because she thought he'd deny it. How does that show a reasonable belief that there's an immediate safety violation? And also, that's the board's factual finding. So even if you disagree and say there are facts to the contrary, why isn't that a determination that's still going to be supported by substantial evidence? Because the board's factual. Sorry, I keep interrupting you all. I'm going to say one more thing. On that one, you have to prove that no reasonable person could have felt that this was not a safety violation, essentially. And so, Judge, on the safety, on the razor blade issue, and going a little bit back to your earlier question on the aid, that interaction with the razor blade came after this Disclosure 5, the physical altercation that she had with the aid. That sets a whole context on concerns about whether she can report this, whether she'll be believed when she reports this. I mean, the board said no reasonable person would have, or she did not have a reasonable belief that the razor blade was a safety violation because if she did, she would have removed it. That's a factual finding. We review it for substantial evidence. Why isn't there substantial evidence for that? Because here the board's- I mean, it's common sense. If somebody thought this was an immediate safety violation, they would pick it up and put it away. And here the board's assessment, and our concern with that, is the board's delving into this intent, delving into the timing on that. That's beyond the consideration that's required for this, whether or not the disclosure is protected. The issue- That goes to reasonable belief. Sorry. Go ahead. Answer his question, and then I'll get back to you. So it can. And I think that the inquiry of the board here on this, the avenue of the board's inquiry on this, is more appropriate in the circumstance if we're looking at immediate disclosures of immediate and imminent health and safety issues, the public health and safety considerations for a disclosure, not whether there's a disclosure of a violation of law, rule, or regulation. We have 4800 that specifically calls out leaving dangerous items in the workplace- not in the workplace, excuse me, the classroom, things like open flame top plates and all that, an exposed razor blade. Any reasonable person seeing that is going to understand that this violates some- Yeah, but just going back to what Judge Hughes previously asked you, right? We talked about the fact that there was a picture taken, but it wasn't removed. To have it be a reasonable belief, you would think, and common sense would say, that you'd actually remove the razor blade. Is that something that you're concerned about? So it was removed that same day. It was not just immediately removed. I think we can agree that at least it wasn't immediately removed, and I would think you would probably also agree with me, her failure to immediately remove it could undermine her credibility before the board. And so, no, I don't believe that's the case here, Judge. Again, we have a situation where, going back to my earlier brief comments to Judge Hughes on this, where you have this interaction with this same individual, where Ms. Benton-Flores was concerned that when she was reporting these misdeeds, these violations by him, she's being pushed aside, not being taken seriously, and then she needs the need to document this meticulously so that management would even look to this, not brush it aside. How could she have a reasonable belief that the exposed razor blade was a danger when she was present when the razor blade was on the desk? She came to it, she was present there, and she ensured by her presence that none of the children picked it up. The issue still goes to the- If he's there and is watching the razor blade, why is there a danger to the children? Because, again, this goes to the same issue of when she encountered the razor blade, she wasn't there for the entirety of the razor blade's presence before the children. And I see my time has nearly concluded here. Yeah, I think we're out of time. We'll give you two minutes for rebuttal. Thank you, Your Honor.  Ms. Fomenkova. Microphone's very close to my face. Good morning, Your Honors, and may it please the Court. Fundamentally, I think what Ms. Benton-Flores has here is a dispute with the Board about the weight of the evidence. And the Board considered the full record, both Ms. Benton-Flores' disclosures, the testimony from other people in the school, her behavior contemporaneously, and on balance on that record was simply unpersuaded. Let's focus on 3A, 3B, and 3C, which seems to me perhaps the strongest argument that they have. And with respect to 3A and 3B, we have to assume on this record, given the Board's decision, that she actually did make those disclosures, right? So, Your Honor, I don't think that's correct. The Administrative Judge, the initial decision didn't really address that issue. I don't see any. Where's the finding that she didn't make those disclosures? So the Board at Appendix Pages 7 and 8 separately, if we look at the top of Appendix Page 7, I'll give you a minute to join me there, and it is the 1, 2, 3, 4th line. Appendix 7 and 8? Yeah. Okay. The Board holds we agree with the Administrative Judge's conclusion that the appellant failed to prove by preponderant evidence that she made Disclosure 3A and it was protected. So we think it addresses both in the alternative that she didn't prove that she made it and that if she made it, it wasn't protected. And similarly, if you look at the bottom of Appendix Page 8, the last sentence in the last paragraph, the Board holds, therefore, we find that she has not proven by preponderant evidence that she made Disclosure 3B and had a reasonable belief that it revealed wrongdoing that rose to the level of a violation of law, rule, regulation, or other protected category. So again, I think you could read that as sort of findings in the alternative, that she didn't prove that she made it, and if we assume that she made it, that she didn't persuade them that it was protected disclosures. Okay. So let's talk about whether 3A, 3B, and 3C, if made, were protected disclosures. Certainly. I mean, she is talking about safety issues. Right. And I think generally speaking, I would say that sort of the theme of the Board's holding here is that she has a lot of incendiary conclusions and just not a lot of facts to back them up. And so she talks about that she says that it, which is why there was the jurisdictional holding. They said, yes, this is enough for a non-fraudless allegation, but when it comes to the preponderance of the evidence standard, we just don't have enough here. And so she described the behavior as improper and dangerous, but what the Board found is that they didn't have enough context to really sort of understand whether a reasonable disinterested observer would interpret what was happening there as being indicative of sort of child abuse or something that rose to the level of seriousness that would be a protected disclosure. How do we figure out the line on that? Or is that just a fact question for the Board to resolve? I think it's just a fact question for the Board. I mean, if a teacher picks up a kid and dangles him out the window, you don't have to specifically say this endangers the child's safety, right? Sure. But you'd have to describe that what happened was that we picked a child up and dangled them out the window. And I think there probably everyone would agree that a disinterested observer would have some concerns about that. If a teacher locked a child in a closet for a couple hours without letting them out, that seems on its face without much further description to be child endangerment. Sure, but I think here what was happening here, and there was testimony in the- Well, let me finish. I'm trying to get at this. Sure. So we have this continuum. So where, again, I know your answer is just going to be this is a fact question, but in that continuum, if those two are clearly, without much other description, bad, then why isn't dragging a child against their will and forcibly placing them somewhere child endangerment? So a couple reasons. I think one, and it is ultimately, I think it does- My ultimate answer to the court's question as predicted is that this is a factual question, and it's whether the board is persuaded on the weight of the evidence, whether it rises to the level of something that would be a violation of law, rule, or regulation. And here, for example, there was testimony that frequently you do have to remove children and sort of put them in sort of a quiet timeout so that they can calm themselves down and it doesn't spread. The speech therapist, which was the individual who removed the child, sometimes take children and sort of work with them on their own. And so the board's holding on this, and they recognized that potentially, given sort of the right context, it could be a very serious sort of situation that's being described. But that here, with respect to 3A, again, in appendix page 7, they held that the appellant has not identified any additional evidence to further explain, for example, what led to the aid's actions, whether the child was harmed in any way, whether she feared that the child was harmed in any way, or precisely how she reasonably believed the, quote, improper and dangerous actions amounted to a violation of law, rule, or regulation. And so they go on to say that the appellant may have reasonably believed that she was disclosing wrongdoing, but she failed to prove that she reasonably believed that she was disclosing wrongdoing that rose to the level of a violation of law, rule, regulation, or other protected activity. And we have sort of similar findings for 3B and 3C, that what we don't know is sort of the context of what happened. Obviously, we have Ms. Becton-Flores' conclusions that she felt it was wrong, and that she felt that her aides were not behaving appropriately, but that there wasn't enough information for the... Do you agree with opposing counsel's statement regarding what the policy would be that would be violated here? So what I didn't hear from opposing counsel is a specific policy identification, and I think that's part of the problem that the board had as well. The, you know, the... I think sort of generally, obviously, we would expect that a school would want to ensure the safety of children, and it's sort of that level of generality. I think we do all agree, but the... And that was pointed to 4,800. Was that not correct in terms of what he pointed to? Well, 4,800, you know, it talks about sort of the... You know, you have to... I guess there's sort of the broadest general statement to ensure a safe and healthy educational work environment for DODA students, staff, and visitors, but otherwise, you know, it talks about implementing federal and safety standards, providing assistance for school officials to achieve compliance with the safety standards, you know, creating... You know, designating a health manager with oversight for development. I'm not sure it's actually really getting at, you know, what is a speech therapist allowed to do to remove a child who's having a tantrum and what kind of... In what circumstances, you know, they are supposed to... You know, essentially, you know, for child safety doesn't mean it's not a policy, right? So you could disclose, if you make a specific enough disclosure of child endangerment, that would be a disclosure about this policy being violated. I think that's right. I think, really, the problem that the board had was the lack of specificity on what happened in order for them to sort of conclude that this was really a child safety issue as opposed to just Ms. Benton-Flores's disagreement with how her aides were sort of doing their job. Well, I guess what we're missing, for example, under 3A, is a question of whether dragging the child was contrary to policy or not. And we just... We really don't know whether that's the case or not, whether there's circumstances in which dragging the child could be consistent with policy and maybe some circumstances in which it wouldn't be. That's right. And there was testimony in the record from the vice principal and the principal that there are circumstances in which it's appropriate to remove a child and to sort of let them calm down, or there's circumstances where it's appropriate for a speech therapist to work one-on-one with a child, and it was the lack of sort of corroborating evidence from... You know, Ms. Benton-Flores referred to sort of other people witnessing some of these events, and there was no testimony put in from those individuals to corroborate what exactly happened, and what was the context of sort of not just her conclusion about it, but what actually occurred on the ground, such that, you know, the board could decide whether a disinterested observer would agree with Ms. Benton-Flores's conclusions and would also sort of reasonably conclude that this was something that rose to the level that would constitute a protected disclosure. Well, with respect to 3A... I mean, 3C, she says that restraining the child by somebody who wasn't trained was a danger to safety, and she says, to the best of my knowledge, the person who did it wasn't trained. So if she'd said, I know that the person who was doing the restraint wasn't trained, that would have been sufficient, right? Sure. I think she also would have helped to provide sort of a specific individual, like, who was restrained when, by whom, and why she concluded that that person wasn't trained. She doesn't need necessarily to identify the person. She says, I know the person, I know the person wasn't trained, and under those circumstances, restraining the child was a danger to safety. That would have been sufficient, right? I mean, again, I think it would be ultimately up to the board to see how that balanced against the rest of the evidence, but I think that would be a much better, stronger case for her, and the board might have been more likely to believe her and that that was a reasonable and protected disclosure. So did the board conclude that she was speculating about the lack of training? That's right, yes. And this is at Appendix 10. The board holds that the appellant did not disclose, for example, that an employee had actually restrained a child in a way that harmed or risked harming the child, nor did she disclose that an employee had restrained a child in a way that was contrary to law, rule, or regulation. Instead, the appellant simply suggested that someone restrained a child at some time and may have done so without training. And there was testimony also from the... I believe it was the principal in the record about the fact that there is a lot of training and that sometimes restraint is necessary and required, but that they have specific trainings for the people who do that restraint such that it is not... So your argument hinges a lot on the specificity that was provided. Is that true? I think that the board's... Or let her out, in your opinion. The board's decision was essentially that she lacked specificity, and that is within their purview to weigh the totality of the evidence and see if they're persuaded, and they in large part, at least based on the decision that they wrote, were unpersuaded given the lack of specificity in her disclosures. I'm happy to address the 2014 decision if the court has any questions about that. I think we're done. Thank you. Thank you, Your Honor. Mr. Baum? You have two minutes. Thank you, Judge. Just to address a couple quick points here. On this issue of the restraining of the child, I do want to point out that as to whether the... A couple points on that. One is specificity, but one on the danger level of this, we do have testimony in the record there from the principal herself at Appendix 634. She agreed that if you have an individual child restrained by untrained staff, such as Ms. Ben-Porres has alleged, yes, she says the child may get hurt. The danger of this... So the problem, nobody disagrees with that, that restraining a child with untrained staff is wrong. The board's conclusion was she didn't provide sufficient allegations to show that that happened, that a reasonable person would think that happened, because it was conclusive. And that's a fact-finding, and there's substantial evidence for it. But again, I think that situation there goes... Judge, I think the board's fact-finding on that is applying those facts to this elevated standard that is outside the scope of what is required to demonstrate that that disclosure protected. The level of specificity that the board digs into... The board applied exactly the correct standard, which is, did this person have a reasonable belief that she made a protected disclosure of a violation of the rule, regulation, or law? And the standard here is, as you said, child endangerment, or if you want to get specific, there probably is a standard about, you know, restraint of children by unlicensed persons. But the board still said she did not meet her burden by a preponderance of alleging that she had a reasonable belief that that ever happened, because she didn't know whether the people doing it were untrained or not. It was speculation. And that reasonable belief, though, here, I think it's worth noting, is fairly permissive here, or fairly open on that. You keep saying reasonable belief is permissive. It's a preponderance standard. You seem to want to convert it into a non-frivolous standard, which it is not. And the board made a determination that she didn't meet her burden by a preponderance, because the allegations were conclusory. And you're pointing to these conclusory allegations as sufficient. How can we overturn that? Because, Judge, here it's simply the standard applied here, and the standard articulated by this court in Edenfield is simply whether a disinterested observer, looking out onto this, the knowledge of the facts known to, ascertainable by, and disinvent for, is in these circumstances, could they reasonably conclude that those disclosures evidence the violation of some identifiable law, rule, or regulation? Yes, but that's not our question to decide. That's a factual question for the board to make in the first instance. We're looking at whether there's substantial evidence to support that. And you have to prove that there's not substantial evidence. And, Judge, what the board is looking to on this in trying to assess this burden is beyond what's required to meet the standard. Can you tell us why you think there's a lack of substantial evidence? Just basically following up and answering the question posed by Judge Hughes. Certainly. So, here again, the lack of substantial evidence is because the board has applied their evidentiary assessment. Their evidentiary assessment is requiring Ms. Dettin-Flores to demonstrate this requirement, this burden of demonstrating these disclosures protected. Her target has been moved, has been elevated here. So the board's finding, again, I think it's not an issue, a pure issue of it's not supported by substantial evidence. It's a, is the board's assessment changing the standard, moving the goalposts on Ms. Dettin-Flores, elevating it to a higher target than is required by the law? Okay. I think we're out of time. Thank you. Thank both counsel and the cases submitted.